IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GABRIELLA L. JONES, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-2317-M-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3*, this case has been referred to the undersigned for Findings, Conclusions, and Recommendation. For the reasons set forth herein, it is recommended that the decision of the Commissioner be reversed and the case be remanded for further proceedings.

**I. BACKGROUND**

**A.   Procedural History**

Gabriella Jones seeks judicial review of a final decision by the Commissioner of Social Security denying her claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act). On September 29, 2008, Plaintiff applied for DIB, claiming that she had been disabled since January 12, 2008, due to bilateral tenosynovitis of the wrists, arms, and neck area. (Tr. at 103-12, 131).[1] Tenosynovitis is the inflammation of a tendon and its enveloping sheath.[2]

---

[1] "Tr." refers to the transcript of the administrative proceedings.

[2] All medical terms have been defined by reference to Stedman's Medical Dictionary (27th ed. 2000), available on Westlaw.

Her application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 52-63, 66-67).

On February 25, 2010, the ALJ issued his decision finding Plaintiff not disabled, which Plaintiff timely appealed to the Appeals Council. (Tr. at 6-7, 11, 17-23). The Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. (Tr. at 1-3). Plaintiff timely appealed the Commissioner's decision to the United States District Court under 42 U.S.C. § 405(g).

The cause is now before the Court on the parties' Motions for Summary Judgment. (Docs. 12, 13). Based on the relevant pleadings, evidence, and applicable law, the Court recommends that decision of the Commissioner be **REVERSED** and that the case be **REMANDED**.

## B. Factual History

### 1. Age, Education, and Work Experience

Plaintiff was born on June 6, 1956, and was 53 years old at the time of the ALJ's decision. (Tr. at 105). She has a high school education and prior work experience as a property manager. (Tr. at 132-35).

### 2. Documentary Medical Evidence

In January 2008, Plaintiff was examined by Dr. William F. Larkin, at which time, a history of cervical strain and neck pain were documented (Tr. at 180). Dr. Larkin also noted several multilevel cervical spondylotic changes, but also determined there was no obvious cord compression or cord deformity at any cervical level. (Tr. at 180-81). Dr. Larkin's treatment notes in February through June of 2008 indicate Plaintiff was undergoing physical therapy for her cervical spine, trapezius muscles, and scalene muscles, and that progress had been made in

decreasing Plaintiff's pain and increasing her range of motion. (Tr. at 199-215). In addition, Dr. Larkin continually completed forms for Assurity Life Insurance Company, indicating Plaintiff could not work. (Tr. at 188-91, 195-98, 214-21, 229-30).

On February 8, 2008, Plaintiff was referred by Dr. Larkin to Dr. Kathy Toler. (Tr. at 183). Plaintiff complained to Dr. Toler of pain in her wrists and numbness and tingling in her hands, as well as pain in her cervical region. (Tr. at 183). Dr. Toler noted Plaintiff was very pleasant, alert, and oriented, experienced a great deal of tenderness in the flexor surface of the forearm and wrist region, experienced no tenderness to the medial and lateral epicondyia, and that her deep tendon reflexes were 1+ and systematic. (Tr. at 183). Dr. Toler diagnosed Plaintiff with Tenosynovitis of the wrist and forearm bilaterally and early carpal tunnel syndrome. (Tr. at 184). Dr. Toler also noted that all nerve conduction studies were normal in the upper extremities, the needle EMG examination of all tested muscles was normal, and there was no electrical evidence of a neuromuscular disease. (Tr at 185). Dr. Toler gave Plaintiff wrist splints, recommended Plaintiff continue taking anti-inflammatory medications as needed, and told her to schedule a follow-up appointment. (Tr at 184).

On March 4, 2009, Plaintiff was examined by Dr. Anuradha Tavarekere for disability evaluation. (Tr at 222-25). Dr. Tavarekere noted Plaintiff's history of neck and wrist pain. (Tr. at 223). Dr. Tavarekere also noted Plaintiff walked stiffly, held her neck stiffly, and had tenderness in her wrists. (Tr. at 224-25). However, Dr. Tavarekere also observed that Plaintiff had normal gaint and station, was able to bend and get back up without difficulty, and was able to handle small objects and button clothing. (Tr. at 224-25). Dr. Tavarekere concluded Plaintiff suffered from bilateral wrist pain that may be secondary to tenosynovitis, neck pain, cervical pain,

degenerative disk disease, and arm numbness secondary to cervical degenerative disk disease. (Tr. at 225). An x-ray performed on the same day showed standard projections with minimal circumferential wrist soft tissue swelling only, and no fracture or dislocation of the intercarpal joint widths. (Tr. at 226).

3.     **Hearing Testimony**

The ALJ held a hearing on November 16, 2009, where Plaintiff, while represented by counsel, testified that her most recent employment was as a property manager, and ended in approximately December 2008. (Tr. at 31-34). Plaintiff said she quit her job because of the pain caused by performing her required duties, including "writing extensive reports, lots of typing, lots of note taking, lots of climbing stairs, lots of walking, lots of lifting, [and] lots of [other] strenuous activity." (Tr. at 34). Plaintiff testified that she is prevented from doing any work since she can only work for a few hours before the pain starts and she has to take a break. (Tr. at 35). Plaintiff further testified that she believes her primary impairment is in "both her wrists and her left neck area." (Tr. at 35).

Plaintiff stated she suffers from carpal tunnel in her wrists, which started in 2008. (Tr. at 35). Plaintiff also stated the weekly therapy for carpal tunnel recommended by her doctor helps. (Tr. at 35-36, 41). Plaintiff testified that the pain is worse in her right wrist than her left wrist, with the pain being about eight on a scale of one to ten. (Tr. at 36). Plaintiff further testified that she suffers from pain in her neck "from all of this," which extends from her neck to the middle of her back. (Tr. at 36-37).

According to Plaintiff, doing anything for a long period of time, "over a couple hours," aggravates her pain. (Tr. at 38-39). On a good day, Plaintiff can walk to the end of her block but

then has to rest for an hour. (Tr. at 39). In addition, on a good day, Plaintiff could sit in a chair for a couple hours but then the pain gets too bad. (Tr. at 39-40). Turning and lifting over a pound also causes Plaintiff pain, and as a result, Plaintiff does not sleep well. (Tr. at 40-41). On a bad day, Plaintiff can walk about half a block, stand for about an hour, and sit for about 45 minutes. (Tr. at 40-41). When asked if she is depressed in light of her situation, Plaintiff replied she is not happy about it. (Tr. at 41).

For her pain, Plaintiff takes Mobic, and testified that "they're really good." (Tr. at 37). If the pain is worse, she will also take hydrocodone, and if that burns her stomach, she will take Lortab. (Tr. at 37). Plaintiff testified that the pain mediation makes her "fuzzy" and a little agitated. (Tr. at 42-43). Plaintiff also wears braces on her wrists. (Tr. at 50). According to Plaintiff, she only leaves her house about three times a week – to go to therapy and church – but does not like driving while on medication. (Tr. at 42-43).

An ordinary day for Plaintiff involves getting up, freshening up and cleaning herself up, making and having some cereal, going to therapy on some days, and not much else besides reading and checking the mail. (Tr. at 44). Plaintiff dresses herself, drives short distances, and goes grocery shopping. (Tr. at 44-45). However, Plaintiff's family helps her cook, do the dishes, wash the laundry, dust, and vacuum. (Tr. at 44-45). Plaintiff lives with her mother, husband, and daughter. (Tr. at 48).

**C.    ALJ's Findings**

The ALJ found Plaintiff had not engaged in any substantial gainful activity since January 12, 2008, the alleged onset date. (Tr. at 17). He also found Plaintiff had the severe impairments of "bilateral tenosynovitis in wrists, arms, and neck pain cervical sprain [sic]." (Tr. at 17). The ALJ

5

concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404. (Tr. at 19). He determined Plaintiff had the Residual Functioning Capacity ("RFC") to perform work of light exertion, in that Plaintiff could maintain a job requiring her to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk at least 6 of 8 hours, and sit at least 6 of 8 hours. (Tr. at 19). The ALJ further found Plaintiff should avoid climbing, squatting, reaching, kneeling, and balancing, including using ladders or scaffolds; but that Plaintiff can occasionally bend, stoop, crouch, or crawl. (Tr. at 19). In addition, the ALJ found Plaintiff should alternate sitting and standing every 30 minutes. (Tr. at 19). He concluded that Plaintiff can maintain attention for a two-hour span, however, tasks should be limited to requiring no more than understanding, remembering and carrying out simple instructions. (Tr. at 19). The ALJ concluded that Plaintiff was able to perform her past relevant work, and therefore, was not disabled as defined by the Act. (Tr. at 22-23).

## II. ANALYSIS

A.  **Legal Standards**

1.  **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not re-

weigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

**2.      Disability Determination**

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1.  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.  An individual who does not have a "severe impairment" will not be found to be disabled.

3.  An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.  If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f),

7

416.920 (b-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**B.** <u>**Issue for Review**</u>

*Did the ALJ fail to apply the appropriate legal standard at Step 2 when determining which of Plaintiff's impairments were severe?*

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A literal application of these regulations is inconsistent with the Act because the definition includes fewer conditions than indicated by statute. *See Stone v. Heckler*, 752 F2d 1099, 1104-05 (5th Cir. 1985); *Charlton v. Astrue*, No. 10-CV-0056, 2010 WL 3385002 at *6-7 (N.D. Tex. July 14, 2010). Thus, the Court of Appeals for the Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone*, 752 F.2d at 1101; *Charlton*, 2010 WL 3385002 at *6-7. Further, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity."

*Stone*, 752 F.2d at 1104; *Charlton*, 2010 WL 3385002 at *6-7.

In *Stone*, the appellate court held that it will assume that the "ALJ and Appeals Council have applied an incorrect legal standard to the severity requirement unless the correct standard is set forth by reference to [the *Stone* opinion] or another of the same effect, or by an express statement that the construction we give to 20 C.F.R § 404.1520(c) is used." *Stone*, 752 F.2d at 1106. Nevertheless, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Brown*, 785 F.2d 1308, 1311 (5th Cir. 1986); *Charlton*, 2010 WL 3385002 at *6-7 (citation omitted). Unless the correct standard of severity is used, the claim must be remanded to the Commissioner for reconsideration. *Stone*, 752 F.2d. at 1106.

Here, the ALJ cited the *Stone* opinion. (Tr. at 17). Nonetheless, when setting out the law in his opinion, the ALJ stated that an "impairment or combination of impairments is 'severe' within the meaning of the regulations it if significantly limits an individual's ability to perform basic work activities." (Tr. at 16). This is the very standard set forth in 20 C.F.R. §§ 404.1520(c), 416.920(c), that *Stone* found to be inconsistent with the Social Security Act. *Stone*, 752 F.2d at 1104-05; *Charlton*, 2010 WL 3385002 at *6. The ALJ also stated that "an impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work." (Tr. at 16) (citing to 20 C.F.R. § 404.1521; SSRs 85-28, 96-3p, 96-4p). The "minimal effect" standard is also wholly inconsistent with *Stone*. *See Charlton*, 2010 WL 3385002 at *6; *Ruby v. Astrue*, No. 3:08-CV-1012, 2009 WL 4858060 at *8 (N.D. Tex. Dec. 14, 2009).

The United States District Court for the Northern District of Texas is uniform in its refusal to find that the standard applied in this case is the standard set out in *Stone*. *See, e.g., Ruby*, 2009 WL 4858060 at *8; *Charlton*, 2010 WL 3385002 at *6-7; *Roberson v. Astrue*, No. 3:10-CV-0240, 2010 WL 3260177 at * 9-10 (N.D. Tex. Aug. 17, 2010); *Sanders v. Astrue*, No. 3:07-CV-1827, 2008 WL 4211146 at *7 (N.D. Tex Sept. 12, 2008). Here, the ALJ's standard implies that a non-severe impairment could have a minimal effect on Plaintiff's ability to work, while *Stone* holds to the contrary that a non-severe impairment would not be expected to interfere with Plaintiff's ability to work. *Foster v. Astrue*, No. H-08-2843, 2010 WL 1340671 at *12-13 (S.D. Tex. March 30, 2010). Although the United States District Court for the Northern District of Texas has recognized that the difference between the two statements may appear to be slight, the ALJ's construction is not an express statement of the *Stone* standard. *Ruby*, 2009 WL 4858060 at * 8.

While the ALJ cites to *Stone*, the standard cited is not the standard used in *Stone*, but rather the standard *Stone* found to be inconsistent with the Act. At the very least, the express recitation of a standard inconsistent with the *Stone* standard creates an ambiguity and this ambiguity regarding whether the correct legal standard was used must be resolved at the administrative level. *Charlton*, 2010 WL 3385002 at *7; *Roberson*, 2010 WL 3260177 at *10.

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of the parties have been affected." *Roberson*, 2010 WL 3260177 at * 10 (citations omitted). However, the ALJ's failure to apply the *Stone* standard is a legal error, not a procedural error. *Id*. The Fifth Circuit has left lower courts no discretion to determine whether such an error is harmless. *Id*. Rather, in *Stone*, the Fifth Circuit mandated that,

"unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106.

Defendant argues that this case is distinguishable because the ALJ found all of the impairments raised by Plaintiff to be severe. (Doc. 22 at 10). However, there were other medical conditions raised by the evidence that were not considered severe by the ALJ. (*See* Tr. 199-215, 225). The Court does not suggest that any of these other conditions, separately or in combination, constitute severe impairments, and only concludes that the ALJ must make precisely that determination while applying the correct standard.

Accordingly, Fifth Circuit precedent requires that this case be remanded because the ALJ applied an incorrect legal standard of severity at Step 2. *Stone*, 752 F.2d at 1106. Because remand is required for failure to apply the proper severity standard at Step 2, the Court need not consider Plaintiff's other issues for review.

### III. CONCLUSION

The Court recommends that Plaintiff's *Motion for Summary Judgment* (Doc. # 12) be GRANTED, that Defendant's *Motion for Summary Judgment* (Doc. # 13) be DENIED, and that the decision of the Commissioner be **REVERSED** and the case be **REMANDED** for further proceedings consistent with this opinion.

**SO RECOMMENDED,** June 22, 2011.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE